## In re INTERNATIONAL MATCH CORPORATION.

District Court, S. D. New York.
May 27, 1932.

Rosenberg, Goldmark & Colin (by James N. Rosenberg), of New York City, for receiver.

Larkin, Rathbone & Perry (by A. H. Larkin), of New York City, for bankrupt.

Samuel Untermeyer, of New York City, for Independent Bondholders' Committee.

Cadwalader, Wickersham & Taft (by George W. Wickersham), and Shearman & Sterling (by S. H. E. Freund), all of New York City, for Debenture Holders' Committee by Agreement of April 11, 1932.

Hays, Podell & Shulman (by Herman Shulman), of New York City, for Committee of Bondholders.

CAFFEY, District Judge.

The Perkins committee and the Redfield (or Independent) committee are, and for some time have been, engaged in campaigns to secure deposits of debentures of the bankrupt. The Redfield committee wants access to whatever information has been gathered by the other committee as to the identity and location of holders of the debentures. The purpose, frankly avowed at the hearing yesterday, is to circularize those people with the view to obtaining authority to represent them.

The order under review directs production by the chairman and the secretary of the Perkins committee of all lists of holders of the debentures, together with the names and addresses of holders known to them, "and any and all other papers and documents in their possession concerning the names and addresses of said debenture holders." The subpœnas, which the witnesses ask to be vacated, employ the same phraseology. For convenience the whole of what is sought will be referred to as lists.

The order was procured by the Redfield committee. It is indisputable that, ostensibly at least, it was predicated on section 21a of the Bankruptcy Act (11 USCA § 44(a).

The provision of the statute invoked permits examination "concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration." Plainly lists of the debenture holders, made up by the witnesses or their committee, have no relation either to the "acts" or to the "conduct" or to the "property" of the bankrupt. No increase or diminution of the trust estate could result from use of them. They may well have to do ultimately with distribution of the estate; but they are the property and are in the hands of third persons. It seems to me, therefore, that what is covered by the order and by the documents required to be produced is wholly irrelevant to an inquiry under section 21a. Accordingly, if the witnesses should appear they could not, under authority of that section, be lawfully compelled to exhibit or to answer questions in

regard to the lists. In re Yourovetta Home & Foreign Trade Co. (C. C. A.) 288 F. 507.

It is argued, however, that the order and subpœnas may be supported by section 39 of the Bankruptcy Act (11 USCA § 67), which defines the functions of the referees.

The petition in bankruptcy in the present case was voluntary. Section 7 (11 USCA § 25), coupled with Bankruptcy Rule 2, casts on a voluntary bankrupt the duty in the first instance to file a list of the names and addresses of his creditors. Section 39 (11 US CA § 67) imposes on referees the duty to cause such lists "as are incomplete or defective to be amended"; also to prepare and file the "lists of creditors required to be filed by the bankrupts, or cause the same to be done, when the bankrupts fail, refuse, or neglect to do so."

The bankrupt here, as I was told at the hearing, has supplied names and addresses of about 11,000 holders of the debentures. From the statements made at the hearing, it appears likely—indeed, with substantial certainty—that this list is quite incomplete, as, in the nature of things, it must be, inasmuch as the debentures are payable to bearer, and were widely distributed in 1927 and 1931.

 If, in the course of performing his duties, the referee should find it needful to resort to information in possession of either committee or of any one else, in order to search out missing debenture holders, I do not determine that he may not do so. There is no occasion, however, now to decide that question. It is manifest to me, after listening to extended discussion by counsel, that a contest is in progress between the two committees to secure representation of as many holders of the debentures as possible. With the outcome of that contest the court has no concern. It should be impartial as between the rivals. I feel that to lend its machinery—certainly to lend help at this stage—to one side or the other would be not only unjustified by anything disclosed in the referee's certificate or stated to me orally, but would be wrong.

Out of abundance of caution, I wish to add a few comments.

 If the referee should believe it necessary to force the submission to him by any one of lists of debenture holders, in order to enable him to discharge his duties under section 39 of the statute, the proceeding therefor should be direct. The need should be made to appear unambiguously. Moreover, in so far as practicable, the procedure to obtain the lists should be so shaped as go no further than necessary for the accomplishment of the referee's own object and should be so safeguarded as to avoid favoring either side in the controversy now in progress between the committees.

It may well be that, upon examination of the deposit agreements proposed by the committees, the court might conclude that both are fair, or that neither is fair, or that only one is fair, in its terms to the debenture holders who are invited to make the deposits. In the absence of very careful and thorough consideration of those terms, the court certainly would not—and probably in no event ever would—advise holders to deposit with either committee or express a preference between the committees. While the struggle is in progress, I am clear that the court should stand aside and let holders elect for themselves the committee with which they wish to be allied. If, on the facts so far presented to me, the court should, in effect, force one committee to turn over to the other the names and addresses of all holders they have in hand, the result would be departure from its position of neutrality.

The court reserves to itself the right, at any time, to say whether it will recognize any committee as the representative of any group of creditors or other class of parties in interest. In order properly to exercise that right, full investigation might be essential. From investigation, it might develop that those composing a committee were indulging in improper procedure, or even were (in the view of the court) seeking to impose upon creditors or others conditions which were unwarranted. In that event—particularly if those affected were small holders or were practically helpless when acting alone—the court might be under the duty, of its own initiative, to take action and to announce its condemnation of what it had ascertained. Even then, however, after making such a disclosure, the court would probably feel compelled to leave the litigants to pursue whatever course they should see fit. No such situation as that discussed has been shown to exist in the case at bar. On that account, the court will not now interfere.

The search for assets should be unsparing. It should have, as apparently it now has, the support of all factions. It should, of course, also have the utmost aid of the court. On the other hand, in the campaign for deposit of claims, the court should, with equal alertness, avoid taking a position or doing a thing which savors of partiality between litigants.

In so far as the production of documents

or revelation of their contents is required of the objecting witnesses, the order is reversed and the subpœnas are vacated. Settle order on one day's notice.